Johnson v. Water, Light, and Sinking Fund Commission of City of Dalton Good morning. Good morning, Counsel. I'm Lindsay Mann. I represent Dalton Utilities. We are here today because the District Court denied Dalton Utilities the benefit of its sovereign immunity, which is guaranteed by Georgia law. Before I get to that, I want to address the Court's questions in the September 1st order. Having reviewed the case law presented in that order, we conclude that Judge Totenberg did not have authority to accept the Fourth Amended Complaint. Dalton Utilities is seeking a reversal of the District Court's order denying its motion to dismiss the Third Amended Complaint. As this Court's holding in Blanco and Greenleaf make clear, the District Court doesn't have any jurisdiction to do anything that would impact the status of this case on appeal. Except that, as I understand it, the Fourth Amendment Complaint, the count that's relevant here, really we're only talking about, what, it's count seven, right, from the Third Amended Complaint? It's six or seven. We're only talking about one count. That count, as I understand it, has not changed in the Fourth Amended Complaint, correct? That's correct, Your Honor. It's nearly identical. Right. So if it's identical, I guess my follow-up question, I'm sorry, is if it's identical, then nothing that the Court has done as to this count, the District Court has done nothing regarding this count that would affect our jurisdiction. It has done some stuff for counts that are still before it, since this is an interlocutory appeal and only involves a small slice of the case. So I guess I'm asking, is your concession correct that the Fourth Amended Complaint somehow is defective or the District Court didn't have authority to do it when it didn't mess with the count that's before us today? I understand your question, Your Honor. Our view is that because the Fourth Amended Complaint superseded the Third Amended Complaint, it essentially rendered it a nullity such that the relief we're seeking, you could not grant the relief that we're seeking. Let me ask this. I've seen some of these complaints. It probably isn't the best way to do it, but I've seen amended complaints which say everything else is the same, count eight added, you know, negligent misrepresentation, and then adds a count there. Would that kind of complaint, if that was the Fourth Amended Complaint, have been problematic, and could the District Court not accept that kind of complaint? I don't think it could have, Your Honor. I think that there has to be... But if everything is identical except a new count that has nothing to do with what we're doing here today? I don't think that the Court could do that. I think that because the Fourth, the new complaint would supersede the prior complaint, making the prior complaint a nullity, it has no legal effect anymore. Counsel. The request to you, you could not grant us the relief we're seeking, which is the... Counsel. Yes, Your Honor. Counsel, I don't believe you've cited a case that directly on point saying that when the interlocutory appeal issue is not affected by the amendment. So my question for you is, why in the world would any judicial system adopt that as a rule and prohibit the District Court from doing that every time there's an interlocutory appeal? If it's lost jurisdiction to permit an amendment, it's lost jurisdiction to grant summary judgment to some other defendant or plaintiff on an issue that doesn't involve this defendant. Why would any judicial system want to do that? So you've got to wait. Let's stretch this thing out as long as we can. Your Honor, I think that the District Court could take action with respect to claims not on appeal. So I certainly, you know, the Court could have left the third amended complaint in place and ruled, for example, on summary judgment on our Clean Water Act claim or on any of the other claims raised by the other complaints superseding the prior complaint. You're talking metaphysics. Counselor, you're talking metaphysics. I'm talking procedural rules that make sense. Why in the world would we want to say you can't do anything else in the case that affects either of these parties and, of course, the plaintiff's party throughout? Will we get through with the in-laws to an appeal? Well, that's not our position, Your Honor. What is your position that we can do? I'm sorry, another question. What is your position that the District Court can do now? Nothing that didn't exist at the time of the third amended complaint? Well, Your Honor, I think that the District Court, the only thing that's frozen is our nuisance claim, the sovereign immunity defense to the nuisance claim. The Court can take action on anything else that's remaining in the case. The Court can rule on summary judgment. The Court can rule on class certification. The Court can decide discovery disputes. The only thing the Court can't do is take action that would impact the status of our appeal. Am I wrong that the other — we cited in our briefing order to you some other circuits that seem to have addressed some part of this issue, and they seem to have taken the position that as long as the new complaint doesn't affect the complaint there, that the District Court can amend and it doesn't affect our jurisdiction in any way, right? Certainly, the courts in Greenleaf and Blanco and — well, not Blanco, but Greenleaf and Wooten and May, there is an implication that the content of the amendment matters, that because they were seeking to amend allegations underpinning the claim at issue, that it wasn't allowed. I think those are easier cases than ours for all the reasons we're discussing now. Right, but where it doesn't affect, it would seem that the converse would also be true. In other words, if it's just a readoption of the same thing that's before us, it would seem to not make sense if we were to write a rule that it would somehow vitiate our jurisdiction and or that the District Court would not be allowed to do exactly the same thing it has already done, which is have this exact same count in a complaint, right? Our concern is that, you know, we're seeking an order reversing the District Court's order on the third amended complaint, and if the third amended complaint no longer exists, we have a concern that you can't grant the relief that we're seeking. All right, assume for the moment that we can. Let's get to the merits. Sure, yeah. I'll turn now to Dalton Utility's sovereign immunity argument. The primary dispositive question at the heart of this appeal is whether sovereign immunity bars a non-takings-based nuisance claim alleged against the municipality. We think it does. Sovereign immunity was given constitutional status in 1974 and once enshrined could only be waived by the Constitution or the General Assembly. Plaintiff appellee does not contend that the waiver here comes from the Constitution or the General Assembly and instead seeks to invoke a third option, a judge-made exception that predates 1974. Yeah, so what I mean, so Town of Oglethorpe is a precedent from the Georgia Supreme Court. It was applied as recently as last year. How can we say that we're not going to apply Town of Oglethorpe's test for getting around sovereign immunity? I think in 2014, the Georgia Supreme Court decided the sustainable coast case and made clear that judge-made exceptions are not permitted whether or not they predate 1974. So to allow a judge-made exception to operate as a waiver here would directly contravene the 2014 holding of sustainable coast. Yeah, I mean, but what do you do with the fact that just last year the Georgia Supreme Court addressed Town of Oglethorpe extensively and applied it and had a footnote in the opinion that said, you know what, some of us think maybe we should overrule this precedent, but didn't overrule the precedent. I mean, you know, I assume that the Georgia Supreme Court is like every other court that says, don't overrule our precedents, let us do it. I mean, are we in a position to just say we're going to ignore that precedent? Well, I mean, I would disagree a little bit with the characterization. I'm not sure that the ghetto court in 2021 applied the Fort Oglethorpe holding. In fact, the- Well, here's what it did. And I read it similarly to how Judge Brasher did. It said, this is what we said and this is how we've applied it. And then what it says is these outer limits, that's the quote, these outer limits are not implicated in this case because this case fell outside even what had been authorized there. That seems to be, in other words, if they were going to overrule, in addition to the footnote that Judge Brasher mentioned, it would be really easy to write an opinion which says this isn't good law, so the theory that you're suing under doesn't exist anymore. That's a much easier opinion to write instead of here's what our law is and this is outside of it and another day we may revisit what our law is, right? Certainly it could have overruled Fort Oglethorpe, and I can't tell you why it didn't, except to say that the Court could have concluded that it reached an easier answer. I'm also a little, I also don't quite understand your reading of Georgia law. And I will say this. It seems to me that there is some sort of internal fight in the Georgia Supreme Court about all this that I'm not privy to, but I can only read what's there. And at least with regard to in Lathrop and in Lowndes County, the Court defined what's been adopted is not just what existed in 1776 or what's been accepted by the Georgia legislature, but, quote, as previously understood by the Georgia courts, end quote, and, quote, as understood traditionally by the Georgia courts. So not just what was understood as the common law in 1776, but as that had been understood by the Georgia courts up until the time the amendment had passed. And then in Lowndes, the Court there said, quote, it does not mean that our pre-1974 case law is irrelevant. Indeed, it is the only way that we can discern the nature of the sovereign immunity that the Georgia Constitution now preserves. I mean, so how can we say that based on these sort of tea leaves that Phillips, I'll call it Phillips, I know my colleague called it Town of Oglethorpe, that Phillips somehow doesn't apply? Well, we think that case law from 1970, predating 1974 might be relevant. It just, after Sustainable Coast, can't be used to carry forward a pre-1974 judgment exception. I think the Lowndes footnote and the- It's not an exception. It's a reading of what the- Wait, wait. I'm sorry. Go ahead, Judge Brash. No, no. Go ahead, Judge. Wait a minute. I thought the Georgia Supreme Court had said the 1974 constitutional amendment is what's relevant because it's the law before then that more or less is frozen in place, and that's what the contours of sovereign immunity, at least municipal sovereign immunity, are. And only the legislature or another constitutional amendment can change that. That's certainly- Am I wrong? No, we agree with you. That's certainly true. Post-1974 and the- Okay. The one case that really- Well, the one case that addresses personal injury, municipal sovereign immunity, is Phillips. And that- I'm sorry. The one case that addresses it before the 74 amendment is Phillips. That is a case, yes, Your Honor. I'm not sure- Well, is there another case between Phillips and the 74 constitutional amendment that overrules Phillips? I believe the Crowder case was decided between 1968 and 1974. I believe that's a 71 opinion. But nevertheless, Your Honor, I don't- It didn't overrule Oglethorpe. I don't want to suggest that. I'm just saying that it's a different case. Our view is that after the sustainable court opinion held that pre-1974 judgment exceptions can't be carried forward, overruling the IBM, the Evans case, clearly states that you cannot use 1974 law to carry forward a pre-1974 judgment exception answers the question. The Supreme Court has- I know you're out of time, and I apologize. But the United States Supreme Court has been pretty clear about telling us that even if the reasoning of our decision has been undermined, even to the point of abrogation, until we say that the opinion is dead and buried, it's not dead and buried. I assume, as Judge Brasher said, that the Georgia Supreme Court has somewhat of a similar rule. In other words, that it knows how to overrule its cases, and it'll tell us when to do so. And at least, you know, taking Gatto out of it, assuming Gatto is somehow dicta on Phillips, at least in Palmiero and Gunnels, the Court applied the Phillips exception. I mean, we have- How can we say that somehow the Georgia Supreme Court, in applying this very thing post-1974, now is telling us to ignore it because on a different case, in a different context, in a different setting, it mentioned in this footnote about what 1970, the amendment, means? Well, sure. Palmiero and Gunnels came before the Sustainable Coast opinion. Did. But I guess my true answer to your question is that if you perceive uncertainty, I think the solution, we respectfully submit that you would submit that question to the Georgia Supreme Court and let the Georgia Supreme Court resolve this very important question of State constitutional immunity. Thank you. Can I ask one question about certification, since you mentioned it at the end? Normally, I might agree with you that we should certify, but I'd like you to address this wrinkle. This is an interlocutory appeal. It's on one count of a multi-account complaint with multiple defendants. You will have the opportunity to argue this again at summary judgment and at trial or wherever else throughout the case you might argument. Why shouldn't we not certify this question, given the ambiguity about whether this question would actually be dispositive to anything in the case? And I guess the factual question is, would this be dispositive even to you in this case? Would it get you out of the case? It's determinative as to our nuisance claim. Right. So just one claim, right? One of those claims, yes. Can I? I want to add a wrinkle to what Judge Brash read. As I understand the certification provision in the Georgia courts, they require certification where it's case dispositive, right? They're basically indicating that where a claim could be severed, like this one, where our defense of the nuisance claim is wholly separate from the Clean Water Act claim. It's properly segregated. It is determinative of the nuisance claim. And, you know, our immunity is from suit, not from liability, and that's the reason for the interlocutory appeal to begin with. And so waiting until a final appeal would deprive us of this protection. One more question about this. One, I'll preface this by saying one pet peeve of mine is defendants who remove and then ask us to certify questions to state courts. This was a removal. But am I right that you didn't remove it? What was your position on removal? Yes, Your Honor, we were added to the case very late. And so the procedural, the removal happened long before we were added to the lawsuit. Thank you. Thank you. Thank you. Good morning, Your Honors. May it please the Court, I'm Brett Johnson for Mr. Jared Johnson. Your Honors, we make no concessions on the effects of the 1974 amendment, but I think the most narrow decisive issue here is whether Mr. Johnson alleges what the Georgia Supreme Court called a traditional nuisance that's rooted in the Takings Clause. Because if he does, Dalton Utilities has to concede that there's no immunity. Traditional nuisance roots in the Takings Clause is not a new but an ancient concept. It predates Sustainable Coast, the 1974 amendment, by many years. And the Georgia Supreme Court explained what that means to be rooted in the Takings Clause. Counsel, I'm having trouble with the theory that somehow you own the water in your pipes and that that somehow is the traditional kind of taking. I'm just having trouble with that. Let's apply it to electricity for the moment, then I'll let you answer. So when I buy electricity, there's a power station some 10 miles away, and I turn on my light and somehow the power gets from there, gets in a wire, and comes over into my house. If someone steals it at the moment it enters my property, so the point that the line goes down towards my house, if someone takes it from there, they don't steal from me, and we know this because there are legions of criminal cases, they steal from the power company, right? Sure. How is that any different for water? Well, I think the Georgia Court of Appeals addresses that in the ZEP case. I mean, I think they agree with the sort of conceptual difference between electricity and water itself, but I think they stated unequivocally that when a customer with the city buys water from the city, he purchases title to that water as a good, and it made no difference whether it was between a pipe or in a bottle. And I don't think any of us could argue about whether the water in this bottle is property. Well, when the water comes out and I put it in the bottle, in my bottle, at that point I assume it's mine. If I, you know, bottle it as luck water and sell it to someone, then yes, that would be my water. But your argument is at the point it's in the pipes or somehow underneath, ready to come up from the pipes, that you own it there. And that to me is a hard sell. And as I read the Georgia Supreme Court case that you're – there the theft is from the water company, right? Yes, it's in the pipe, but it's from the water company. That fits in very neatly with what I understand to be the power company cases. I have never seen a case, and let me – and tell me if I'm wrong, where the suit was from a plaintiff, a homeowner, that their water was pilfered somehow and they seek recompense from the person who was pilfering the water somewhere between the point of getting on their property line and outside the faucet into my bottle of water. Is there such a case? I'm not sure there is, Your Honor. I would just have to go back to the Zepp case that we own title in this water. It is tangibly different. This is a long way of saying of I think you have a hard time for me showing a non – a traditional nuisance given this kind of claim. In other words, this is not – this isn't to me a sewage that's leaking onto your property or nearby causing a smell. This isn't an airport where someone's flying over and causing a noise nuisance. This is not the traditional interfering with your right to use your property in any sense that I understand it. This is a – seems to me very much in line with what the Georgia Supreme Court has authorized in Phillips and its line of cases, which is a separate tort which causes you some sort of harm based on what the municipality does. Right? I disagree that – I think there's a conflation there of the water itself and the real property that receives it. I think the use of household water is a part of the use and enjoyment of the home. So I think what we're bringing forward are two different concepts. Not traditionally. I mean, unless we're talking about a river and riparian rights, you don't have a right to – let's say there was a lake on my property, which is three away from yours. You don't have a right to the fair use of my water. That's my lake. What you have a right to is what's the use of your property. And, again, show me the case that says that in modern life, that putting a pipe down, connecting it to the local connection, and getting a faucet somehow interferes with your traditional understood use of the 1976 use of your property in the way that a noxious smell would or a noxious noise would or pollution that's actually put on your very property that affects its both value and use. Your Honor, I respect your point of view. I would just disagree that when we – I'm not sure it's a point of view. I'm trying to test. You come to me and argue to me that this is a traditional nuisance. And I'm trying to explore how that could possibly be, given my understanding of the law. So tell me, what Georgia case am I missing? What theory of the common law am I somehow missing? Well, let me just revisit Gatto in defining what a traditional nuisance is that makes a nuisance be rooted in the takings clause. It somehow relates to the use of the planet's property or it relates to the physical condition or the use and enjoyment thereof. If Mr. Johnson is buying water that's contaminated with toxic chemicals for household use, how is that – the only necessity would be the air itself, right? They've cited cases – case after case about contaminating the air with poisonous vapors, industrial gases, people – in its threat – in the health threat of that interferes with their use and enjoyment of their home. I don't see how that is conceptually different from giving someone water that contains toxic chemicals linked to numerous human diseases. Okay. Can I ask you to address something different, which is opposing counsel conceded that there was no jurisdiction in this case. What do you say about the jurisdictional question? I think I agree with Ms. Mann that it doesn't affect this court's jurisdiction. I disagree that it affects the district courts because, again, under Greenleaf Nursery, the district court can continue to have jurisdiction over cases unrelated to this appeal. The amended claim just added claims to new allegations in the Clean Water Act and left the nuisance claim untouched. So I think the district court and this court coexist quite cleanly here. Do we even have what the district court did before us? In other words, we can't even say that what the district court did is void or not. That's not even something that's on appeal to us. We have a very limited appeal. I don't even know how we could possibly say that the district court lacked authority to do what it did. All we can say is whether it affects our jurisdiction. That we can say, right? And I would not argue that the consent of Dalton Utilities affects this court's jurisdiction, but this was an appeal by consent. I mean, I'm sorry, an amendment by consent. Some of the cases, though, have said it doesn't affect our appellate jurisdiction because the district court didn't have jurisdiction to accept that amendment. That's what it has to do with that. But that's a different case than the one we have before us. It didn't strip us of the jurisdiction to decide the interlocutory appeal that we were already in the process of processing. I agree, Your Honor. Would you address the certification issue that opposing counsel raised at the end of her time? Which is whether we should certify. Let's just assume that we disagree with you about whether this is a traditional nuisance action, and so it really does come down to whether Talent of Oglethorpe or Phillips applies. Should we certify the question of whether Phillips is still good law to the Georgia Supreme Court, or should we just apply it? My concern with that, Your Honor, is that my argument with Phillips is that the expanded notion of nuisance applies to injuries that are unrelated to the plaintiff's property. As long as that's made clear that we don't concede that this is a condition unrelated to the property, then I do think the Georgia Supreme Court should be the one to make that decision. I think they've made it pretty clear. Although, sure, there's internal debate between some justices. I see that. The most striking thing to me about this issue is that I've only found two instances where a court has read Sustainable Coast, that Daughton Utility has urged here, and urged the District Court. That was, I think, City of Albany versus Stanford, and the Court of Appeals, and again, Gatto and the Court of Appeals. Both of them basically followed that reasoning of Sustainable Coast that the Phillips line of cases was retroactively abrogated. Supreme Court comes in on Gatto, affirms it on different grounds, and basically after that, the same Georgia Court of Appeals that made the Stanford and the lower Gatto decision came back in Beazley and admitted that it was an overreach. That seems to be a separate question, though, from whether Phillips is still good law. In other words, the reasoning of Phillips, their reading could be 100 percent right. It may be that the interpretation that the 1974 amendment rejected all modern versions of the common law and only that which existed at the time of the founding of the state of Georgia are what carried forward, and therefore this newfangled nuisance claim doesn't exist. That may all be true, but that seems to be separate from whether Phillips is still good law or not. It seems to be the prerogative of the Georgia Supreme Court to decide whether it's good law or not, and in its good time will tell us when it is or isn't. But right now, is there anything to indicate that it's not good law? No, sir. And what's your best argument for that? I just think the fact that the Georgia Supreme Court had, I mean, that was the exact holding from the Court of Appeals in Gatto, and all that took was an appeal. In other words, it would have been very easy for the Supreme Court to say... Extremely. Rubber stamp it. Right. Phillips doesn't exist because the 1974 amendment did away with it, and so we don't have to get this claim. Instead, it said, here's the outer limit of what this tort is, and the Gatto complaint falls outside of that. Right. So we're not really... We wouldn't be asking the Georgia Supreme Court an unsettled question. We'd be saying, telling them, hey, y'all decided this. It would just be broaching the same issue again when they have left it intact. Judge Carnes, anything else? No. Thank you, counsel. Thank you. I'll yield the floor. Thank you. I just have a few quick points. I guess first, I would agree with you that there is no Georgia law establishing a constitutionally protected private property interest in water coming out of the faucet. I will say, though... So counsel raises an interesting point. I think... Let me ask it this way. Let's assume we're now in the Georgia Supreme Court. We've been certified. Are you going to argue that this is not a Phillips kind of claim as an alternative argument of some sort? This is not a Phillips claim because it's related to property, and a Phillips claim has to be completely unrelated to the property. Are you going to make that argument? I don't... I mean, I guess as I stand here, I don't intend to. I think what we would say is that not only has he not... has plaintiff appellee not met his burden of establishing the waiver, but he also didn't plead his claim based on this, quote, unquote, traditional property interest he's now advocating for. His claim against Dalton Utilities is a claim for public nuisance. It's grounded in two harms, an increased risk of... Well, that argument's really not before us. The district court read it as both. The district court found that there was... that both theories had been properly alleged. I'm not sure I agree with one. I think I agree with the other. I'm not 100 percent sure on it, and we'll explore that. But I want to go back to the question I actually asked you, which is are you going to argue that this is unrelated? Because if it's related to property, then it becomes closer to a traditional nuisance claim, right? That's what we're getting at here. Sure. Are they in a box, in other words? Do they lose both ways? I'm not... I might not be tracking your question, Your Honor, but, you know, I don't think that we're going to... I think that we're going to allege that they haven't asserted a takings-based claim because their public nuisance claim isn't grounded in any constitutionally protected private property interest. So you agree that they have... they have, in fact, alleged, assuming it exists... I know that your argument doesn't exist, but assuming it exists, they have alleged a proper Phillips kind of nuisance claim. I think that if the law of Phillips is good law... Yes. ...that this claim likely would overcome... The likely here is getting me a little nervous. Did they properly allege a Phillips kind of claim? Assuming Phillips is good law, all of them. If Phillips is good law, yes, Your Honor, I think they did. Okay. And let me turn quickly and just address the Phillips case really quickly. I guess I just want to point out that no Georgia appellate court since the Sustainable Coast, setting aside waivers for insurance, for example, no Georgia appellate court since Sustainable Coast has allowed a non-takings-based nuisance claim to proceed. I also think that the Gatto Supreme Court couldn't just rubber stamp the Court of Appeals. It would have, as you note, required it to overturn the Fort Oglethorpe question. And that is, I think, the Georgia Court of Appeals perhaps reached an easier question, which is setting all of that aside. This wasn't. The city estates were in that case couldn't be liable for a nuisance. And I guess to find, as plaintiff appellate suggests, that the law is settled, you would have to overcome the decision in the 2014 Sustainable Coast opinion, and I'm not sure that that can be done. And to the extent there's any uncertainty, we again request that you certify this question to the Georgia Supreme Court. Thank you. Thank you. Thank you. Thank you, everybody. We are in recess. All rise.